**WALKER MOBILE HOME SALES, INC., Respondent,**

v.

**Gary L. WALKER, Appellant/Respondent,**

**and**

**Green Tree Financial Corporation, Respondent/Appellant.**

**Nos. WD 53285, WD 53299 and WD 53402.**

Missouri Court of Appeals, Western District.

Feb. 10, 1998.

Motion for Rehearing and/or Transfer to Supreme Court March 31, 1998.

Application for Transfer Denied May 26, 1998.

Joseph H. Moore, Kansas City, for Appellants.

Edward Campbell, Kirksville, David Allen Masters, Macon, for Respondent.

SPINDEN, Presiding Judge.

Gary L. Walker, Walker Mobile Home Sales, Inc.,[1] and Green Tree Financial Corporation have been wrangling for nearly four years over who is responsible for Green Tree's not financing Walker's purchase of a mobile home from Walker Mobile Home Sales. Walker contracted to buy a $38,000 double-wide mobile home from Walker Mobile Home Sales in 1994, but the deal reached an impasse when Green Tree changed its mind about financing the purchase. It initially said that it would finance the purchase, but, after Walker Mobile Home Sales delivered and set up the house at Walker's site, it changed its mind because it realized that Walker did not have a job. Walker Mobile Home Sales has not been paid for the house although Walker has been tendering monthly payments to it. It has refused to accept the checks.

Walker Mobile Home Sales sued Walker for breach of contract. Walker impleaded Green Tree as a third-party defendant and accused it of breach of contract, negligent handling of his loan application, and fraud.

In Walker Mobile Home Sales' breach of contract suit against Walker, a jury awarded the dealer $34,443, the amount due on the house, plus $25,000 in attorney fees. In Walker's suit against Green Tree, the jury

---

1. Gary Walker is not related to the owners of Walker Mobile Home Sales.

awarded Walker $10,000 for his breach of contract claim, $1 in actual damages and $125,000 in punitive damages for his negligence claim, and $1 in actual damages and $10,000 in punitive damages for his fraud claim. Walker and Green Tree both appeal.

The dispute arises from Walker's decision on March 22, 1994, to buy a house from Walker Mobile Home Sales and to finance $34,843.01 of the $38,874.01 purchase price. He signed a preprinted purchase agreement in which Walker Mobile Home Sales "agree[d] to sell and [Walker] agree[d] to purchase" a 1994 Fuqua Limited 602 house. The agreement said, "If [Walker does] not complete this purchase as a cash transaction, [he knows] before or at the time of delivery of the unit purchased, [he] will enter into a retail installment contract and sign a security agreement or other agreement as may be required to finance [his] purchase." With help by Walker Mobile Home Sales personnel, Walker filled out a credit application for financing on a form supplied by Green Tree, a firm with which Walker Mobile Home Sales regularly dealt when its customers needed to finance a purchase.

Walker Mobile Home Sales immediately sent to Green Tree by facsimile machine documents to support Walker's application, including a pay stub of one of Walker's payroll checks. On March 24, 1994, Dean Jacquin, a credit manager at Green Tree, telephoned Walker Mobile Home Sales to report that Green Tree had found Walker's application acceptable and had decided to purchase his contract from Walker Mobile Home Sales.

That same day, another Green Tree employee telephoned Walker's employer to verify Walker's employment. Someone at Walker's place of employment told Green Tree that Walker's position would be eliminated on May 1, 1994. Green Tree's staff again telephoned Walker Mobile Home Sales for an explanation.

In response to Green Tree's inquiry, Willadean Walker of Walker Mobile Home Sales discussed the matter with Walker. He confirmed that his job was ending on May 1, but he said that his employer's giving him another job was possible.[2] Willadean Walker relayed this information to Green Tree, and Green Tree continued processing Walker's loan.

On March 26, 1994, Walker paid in full the remainder of his $3900 down payment. On April 1, 1994, Walker Mobile Home Sales received documents from Green Tree to complete the deal. Included was a credit approval letter, retail installment contract, a points commitment letter, a landlord's waiver, a financing statement, insurance binder, and a Missouri title application. These documents listed Green Tree as the assignee or lienholder. The credit approval letter, listing an approval date of March 24, 1994, said:

Provided you [Walker Mobile Home Sales] and the prospective purchaser [Walker] meet the conditions described below, we agree to acquire from you the applicant's retail installment contract in connection with the purchase by the applicant of [FUQUA / LIMITED, Serial № FH468635X94].

. . . .

The conditions of the approval are: Income/Current YTD Paystub, Income/W–2's for 2 Years, copy of Deed, Disclaimer/Landlord Wvr (private prp), COPY OF D/P CHECK, INSURANCE BINDER W/1 YR PAID RECEIPT.

The letter said that Green Tree's approval was effective until May 8, 1994. The points commitment letter, also dated March 24, 1994, said, "The ... loan has been approved[.]" Walker satisfied all of the conditions applicable to him before signing Green Tree's loan documents on April 2, 1994.[3]

**2.** Willadean Walker testified that Walker told her that "he was still going to be employed by the city in another capacity, that they were just going to move him on at another job." We must view the evidence in the light most favorable to the jury's verdict. Because those facts concern Walker's claims against Green Tree, we accept Walker's version of the conversation for purposes of determining the facts on appeal.

**3.** Willadean Walker testified that she had to get a new retail installment contract from Green Tree because the dates on the first one were incorrect. Walker signed the retail installment contract on April 28, 1994.

The retail installment contract listed Walker as buyer, Walker Mobile Home Sales as seller, and Green Tree as assignee. The contract said that Walker agreed to pay Walker Mobile Home Sales [4] 240 payments of $342.26 each to finance the purchase. It indicated that Walker Mobile Home Sales would sell the contract to Green Tree, and included several conditions governing assignment of the contract to Green Tree. The contract said, "[Walker Mobile Home Sales] hereby sells, assigns and transfers to [Green Tree] its entire right, title and interest in the Contract and the property described therein[, a 1994 Fuqua LTD602 mobile home,] ... with full authority to do every act and thing necessary to collect and discharge same."

Walker Mobile Home Sales delivered the house to Walker on April 27, 1994, and completed its set-up at Walker's site on April 30, 1994. Walker Mobile Home Sales then compiled the completed loan documents and shipped them to Green Tree.

On May 4, 1994, Green Tree called Walker's employer again to verify his employment. Green Tree learned that Walker was no longer employed. A Green Tree employee telephoned Walker Mobile Home Sales and said Green Tree would not fund the loan unless Walker could verify current employment.

Willadean Walker went to Walker's house and told him that he would either have to get verification of employment or find other financing. Because Walker was no longer employed, he could not verify employment. The record does not indicate whether he attempted to find other financing.

Green Tree later asked Walker for some indication of income—even checks for unemployment compensation. Walker decided to give Green Tree nothing more. Green Tree cancelled purchase of Walker's contract from Walker Mobile Home Sales a few days after its scheduled expiration date of May 8, 1994.

Walker has sent Walker Mobile Home Sales a check for his monthly payment every month since his first payment was due in May 1994. He made the checks payable to Walker Mobile Home Sales and to Green Tree. Walker Mobile Home Sales has returned each check to Walker.

In his appeal of the jury's award of nearly $59,500 for Walker Mobile Home Sales, Walker raises three points of error. He complains that the circuit court should not have permitted the jury to rule for Walker Mobile Home Sales on its breach of contract action because it had assigned its contract with Walker to Green Tree through the language of the retail installment contract, so Green Tree—not Walker Mobile Home Sales—was the real party in interest. He also contends that the circuit court's verdict directing instruction on the breach of contract action against him was not specific enough in identifying whether the breach was of the March 22, 1994, purchase agreement or of the April 28, 1994, retail installment contract. His third point is that the jury did not have sufficient evidence to support its awarding Walker Mobile Home Sales $25,000 in attorney fees and costs.

Walker did not preserve the first two points. He did not raise them in his motion for a new trial. Rule 78.07 says:

> In jury tried cases, other than cases tried with an advisory jury, allegations of error to be preserved for appellate review must be included in a motion for a new trial except that questions of jurisdiction over the subject matter, questions as to the sufficiency of the pleadings to state a claim or defense, and questions authorized by Rule 72.01 to be presented in motions for judgment need not be included in a motion for a new trial.

Walker acknowledges that he did not preserve the first point, but he contends that we should review it anyway because Green Tree was an indispensable party. He argues that Green Tree was indispensable because it was the only party with the right to sue him for breach of contract in light of Walker Mobile Home Sales' assignment of the retail install-

---

4. The contract said, "I will pay you the amount shown as the 'Total of Payments' according to the payment schedule shown above." The contract defined "I" as the buyer, or Walker. It defined "you" as the seller, or Walker Mobile Home Sales. It also said, " 'You' ... also means the financial institution [or Green Tree] after the Contract is sold."

ment contract—the only contract in dispute—to Green Tree. He argues that the purchase agreement of March 22, 1994, was merged into, or superseded by, the retail installment contract. He contends that failure to join an indispensable party is jurisdictional and may be raised at any time, even on appeal.

Green Tree, however, *was* a party to the action. Walker impleaded Green Tree as a third-party defendant. Green Tree participated in the proceeding as a defendant.

■ Nonetheless, although Walker argues something else, the essence of his contention is that the only contract in dispute in this case is the retail installment contract between Walker and Walker Mobile Home Sales. The retail installment contract, he asserts in making his argument, superseded the purchase agreement as the contract for purchase. We agree. The later retail installment contract, entered into by Walker and Walker Mobile Home Sales for the sale for the same mobile home, said, "This written Contract is the only agreement that covers [Walker's] purchase of the property." This means that the jury found Walker in breach of a nonexistent contract, the purchase agreement of March 22, 1994.

Walker did not preserve the issue for our review, but Rule 84.13(c) authorizes us to consider an unpreserved issue if it presents a "plain error." The Supreme Court has defined plain error as error which, on its face, establishes substantial grounds for believing that manifest injustice has resulted from the error. *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc), *cert. denied*, 516 U.S. 1031, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995). Walker's case presents plain error. Facially, we discern a substantial likelihood that Walker has been ordered to pay nearly $59,500 for breaching a contract which was no longer in effect when the alleged breach occurred. We

exercise our discretion under Rule 84.13(c) to review the matter.

After entering into the purchase agreement, Walker Mobile Homes Sales executed the retail installment contract as the seller. Its president signed it on behalf of Walker Mobile Home Sales as seller and secured party. The retail installment contract, because of its provision that it was "the only agreement" concerning Walker's purchase of the 1994 Faqua Limited 602, became the only contract governing the terms of Walker's purchase.

The contract gave Walker an "option." It said that he either could buy the house "for the cash price or [buy] on credit" according to the terms set out: 240 payments of $342.26 each. Walker opted to buy on credit. Walker Mobile Home Sales insisted at trial that it had no intention of financing Walker's purchase, but that is not what its contract said.[5] The contract further provided that the written provisions expressed the full extent of the parties' agreement. Had Walker Mobile Home Sales wanted to condition Walker's credit option on Green Tree's accepting assignment of the contract, it could have easily added such a provision. It did not. The contract did not condition Walker's option to finance on someone else's financing the purchase. According to the contract, Walker's payments were to go to Green Tree only if Walker Mobile Home Sales assigned the contract to Green Tree. The contract specifically provided, "I will pay you [which had been defined by the contract as Walker Mobile Home Sales] the amount shown as the 'Total of Payments' according to the payment schedule shown[.]"

Walker Mobile Home Sales tried to assign the contract to Green Tree, but Green Tree either did not assent to the assignment or breached the collateral dealer agreement it had with Walker Mobile Home Sales.[6] From

---

**5.** Although Willadean Walker testified that she told Walker before he signed the purchase agreement that Walker Mobile Home Sales did not finance purchases, the retail installment contract, the final written agreement between the parties, lists Walker Mobile Home Sales as the party signing the installment agreement. Parol evidence is not admissible to vary the terms of an

unambiguous contract. *Norden v. Friedman*, 756 S.W.2d 158, 163 (Mo. banc 1988).

**6.** When Green Tree announced approval of Walker's loan, it communicated only with Walker Mobile Home Sales: "Provided you and the prospective purchaser meet the conditions described below, we agree to acquire from you the applicant's retail installment contract in connec-

this record, we cannot know which occurred, but, either way, the contract did not condition Walker's option to finance the purchase on Green Tree's acceptance of Walker Mobile Home Sales' assignment. That Green Tree did not accept the assignment or failed to perform under its obligations did not deprive Walker of his option.

The contract provided that, before Green Tree would accept assignment of the contract to it by Walker Mobile Home Sales, the dealer would have to warrant to Green Tree that "there have been no material changes in [Walker's] income, indebtedness or employment and no other material changes between loan approval and funding." The contract made this warranty a condition to Green Tree's "funding the Contract." This suggests that Green Tree was looking to Walker Mobile Home Sales to verify Walker's information. Nonetheless, Green Tree's refusal of the assignment did not vitiate Walker's option of buying the house on credit from Walker Mobile Home Sales.

Hence, the circuit court erroneously permitted the jury to find that Walker was obligated to pay Walker Mobile Home Sales cash for the house. We, therefore, reverse the circuit court's judgment for Walker Mobile Home Sales. This ruling moots the other issues raised by Walker concerning the instruction and the attorney fees. We, therefore, do not address those issues.

We turn to the issues raised by Green Tree in its appeal. It charged the circuit court with seven points of error. In its first point, it complained that the circuit court erred in entering judgment for punitive damages, and it divided the point into three subparts. In the first subpart, it asserted that the jury did not find the requisite actual damages to support punitive damages, but, in another subpart, it argued that we should set aside the punitive because the awards were disproportionate to the actual damages found. In a third subpart, it argued that Walker did not establish outrageous conduct by Green Tree. In its second point, Green

Tree charged the circuit court with error in permitting Walker to mention a specific amount of damages in the rebuttal portion of his closing argument because he did not mention an amount in the opening portion. Its third point argued that the circuit court's submitting Walker's fraud claim was error because Walker did not prove that Green Tree had a present intent to misrepresent that it had approved a loan to Walker. Its fourth point contended error in submitting Walker's claim that Green Tree negligently handled his loan application because Green Tree did not owe Walker a duty of reasonable care and because Walker misrepresented his employment. In point five, Green Tree contested the circuit court's permitting Walker to submit both negligence and fraud to the jury because, it argued, they were inconsistent theories. Point six concerned whether the circuit court properly allowed Walker's expert to give an opinion as to what Green Tree's duty was because that was a question of law. Finally, in point seven, it argued that the circuit court erred in submitting Walker's breach of contract action because Walker's misleading statements about his job negated any contract and because Walker did not submit proper evidence concerning the measure of damages.

Walker complained that Green Tree did not preserve all of the points. He pointed to subpoints of Points I and IV and to Point V. We need not decide whether Walker was right because Green Tree established in the other points it did preserve grounds for our reversing all judgments against it. As for the fraud and negligence claims, even if we were to assume that Green Tree made a misrepresentation and breached its standard of conduct, Walker did not establish requisite element of damages. We also conclude that Walker did not present any evidence that Green Tree breached any contractual duties to Walker. We, therefore, reverse the circuit court's judgment for Walker.

■ Of the nine elements of fraud,[7] Walker did not establish the ninth: that he suf-

tion with the purchase by the applicant of the . . . property."

7. The Supreme Court listed the nine elements in *Heberer v. Shell Oil Co.*, 744 S.W.2d 441, 443 (Mo. banc 1988):(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowl-

fered consequent and proximately-caused injury. The jury returned a verdict of no actual damages until the circuit court ordered it to reconsider, and then it returned a verdict of $1 in actual damages. The $1 verdict constituted nominal damages, which "are the same as no damages at all." *Simpkins v. Ryder Freight System, Inc.,* 909 S.W.2d 683, 686 (Mo.App.1995).

The jury's verdict was just. Walker obtained his house and had a contract providing him the financing terms he wanted. He was in the same position he would have been in had Green Tree not made the purported misrepresentation.

Because Walker failed to establish that he suffered any damages, he did not establish the requisite elements of fraud. *Lammers v. Greulich,* 262 S.W.2d 861, 864 (Mo.1953). We reverse.

■ For the same reason, we reverse the award for Walker sounding in negligence. Of the four elements traditionally set out as required to establish negligence,[8] Walker failed to establish the fourth: actual loss or damage resulting from Green Tree's purported negligence. The jury returned a verdict for nominal damages of $1. "As damages are an element of a cause of action for negligence, nominal damages cannot be awarded on such a claim." *Ponder v. Angel Animal Hospital, Inc.,* 762 S.W.2d 846, 847 (Mo.App. 1988).

For the same reasons we noted above, the verdict was just. Walker obtained everything for which he had bargained. Assuming that Green Tree breached a standard of conduct, he suffered no detriment. We reverse this cause of action.

■ Finally, we reverse the breach of contract action. Walker shows us no contract between him and Green Tree because they did not have one. Walker's contract was with Walker Mobile Home Sales. If Green Tree breached a contract, it breached its agreement with Walker Mobile Home Sales concerning its purchase of Walker's contract. Walker prepared an application for a loan from Green Tree, but the application was in support of his contract with Walker Mobile Home Sales and was to be part of the inducement to get Green Tree to purchase the contract. Green Tree's announcement was in fulfillment of its obligation to Walker Mobile Home Sales concerning accepting assignment of Walker's contract. It made its announcement to Walker Mobile Home Sales, the party with which it was negotiating—not Walker.

The confusion for the circuit court, perhaps, was that it was envisioning a situation in which Walker made direct application to, and entered into negotiations with, Green Tree. He did not. All of his dealings and negotiations—and his contract—were with Walker Mobile Home Sales. Hence, the circuit court erred in allowing Walker's breach of contract action.

For these reasons, we reverse the circuit court's judgment for Walker Mobile Home Sales because the dealer did not establish a breach of contract by Walker. We reverse the circuit court's judgment against Green Tree because Walker established no liability arising from Green Tree's conduct.

LAURA DENVIR STITH and EDWIN H. SMITH, JJ., concur.

---

edge of its falsity, or his ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) his right to rely thereon; and (9) the hearer's consequent and proximately caused injury.

**8.** The Supreme Court set out, in *Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc./Special Products, Inc.,* 700 S.W.2d 426, 431 (Mo. banc 1985),

these four elements as necessary for a negligence cause of action: (1) a duty or obligation recognized by the law requiring the actor to conform to a standard of conduct for the protection of others against unreasonable risks; (2) failure by the actor to conform to the standard of conduct; (3) a reasonably close causal connection between the actor's conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another.