# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1360

_____

Michael Troknya, John M. Hafner,    *
Scott Miller; Jennifer Allen, Jon    *
Michael Wheat; Mitch Gadow; Don C.    *
Wheeler, III; Carol Lister; Kevin    *
Lehane; Eugene Johnson; Jonathan    *
Lui; Brian Lane; Jason A. Hutchinson;    *
Preston Wang; Laurie Rogers; Ron    *
Muse; Timothy Laber; Chris Butler;    *
Nicholas Calvino; Aubrey Gail,    *
  *
               *   Appeal from the United States
        Appellees,  *   District Court for the
               *   Western District of Missouri
     v.  *
  *
Cleveland Chiropractic Clinic,  *
  *
        Appellant.  *

_____

Submitted: September 14, 2001

Filed:  February 21, 2002
_____

Before HANSEN,[1] Chief Judge, and McMILLIAN and BEAM, Circuit Judges.
_____

McMILLIAN, Circuit Judge.

_____

[1]The Honorable David R. Hansen became Chief Judge of the United States Court of Appeals for the Eighth Circuit on February 1, 2002.

Cleveland Chiropractic College (CCC) appeals from a final judgment entered in the United States District Court for the Western District of Missouri, upon a jury verdict finding it liable to nineteen former CCC students (plaintiffs) for negligent misrepresentation and awarding them each $1.00 in actual damages and $15,000.00 in punitive damages. See Troknya v. Cleveland Chiropractic College, No. 99-0746-CV-W-2 (W.D. Mo. Jan. 8, 2001) (Troknya v. CCC) (final order denying motion for judgment as a matter of law); id. (Nov. 28, 2000) (judgment following trial). For reversal, CCC argues that the district court: (1) abused its discretion in excluding certain evidence at trial, (2) erred in upholding the jury's negligent misrepresentation finding and related actual damages awards of $1.00 per plaintiff, and (3) erred in upholding the jury's punitive damages awards of $15,000.00 per plaintiff. For the reasons set forth below, we affirm in part, reverse in part, and remand the case to the district court for further proceedings consistent with this opinion.

Jurisdiction in the district court was proper based upon 28 U.S.C. § 1332. Jurisdiction in this court is proper based upon 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(a).

## Background

The following is a brief summary of the relevant procedural history. Plaintiffs, who each paid CCC approximately $50,000 in tuition and each graduated in 1997, filed their original complaint on August 3, 1999, and an amended complaint on October 18, 1999, alleging that CCC had failed to provide the quality and quantity of clinical training promised to them prior to their enrollment at CCC. Plaintiffs asserted, among other claims, breach of contract, fraud, and negligent misrepresentation. They sought actual damages of at least $75,000 per plaintiff and punitive damages of $1,000,000 per plaintiff, or any amount deemed appropriate.

Following discovery, plaintiffs moved for partial summary judgment, arguing that CCC was collaterally estopped from denying liability for fraud in light of a jury verdict against CCC on a similar fraud claim brought by another CCC graduate in a separate civil action. CCC filed a cross-motion for summary judgment, asserting legal deficiencies as to each of plaintiffs' claims. Upon review, the district court denied plaintiffs' motion for partial summary judgment, holding that the facts of the prior case were not sufficiently identical to the facts of the present case for collateral estoppel to apply. The district court partially granted CCC's motion for summary judgment, dismissing several claims not presently at issue on appeal. Troknya v. CCC, slip op. at 7 (Nov. 10, 2000) (summary judgment order). The district court's summary judgment order left plaintiffs' breach of contract, fraud, and negligent misrepresentation claims remaining for trial.

Prior to trial, the parties submitted their lists of anticipated trial exhibits and witnesses and thereafter filed several motions in limine. The district court entered an order disposing of their motions which, among other things, sustained plaintiffs' objection to any witnesses CCC had included in its trial list but failed to list in its Fed. R. Civ. P. 26 disclosures or supplements thereto. The district court also sustained plaintiffs' objection to any exhibits not identified prior to the close of discovery. Troknya v. CCC, slip op. at 2 (Nov. 9, 2000) (order disposing of pretrial motions). CCC made an offer of proof on the record as to the evidence it otherwise would have introduced at trial.

The case proceeded to trial. Plaintiffs presented evidence to show the following facts. Prior to enrolling at CCC, plaintiffs were promised, orally and in writing, that CCC would provide them with ample clinical training and experience – a critical part of a chiropractic education and a requirement for graduation and obtaining a license to practice. More specifically, CCC expressly promised in writing that: (1) CCC would provide the clinical patients, (2) plaintiffs would see an ample volume of clinical patients, and (3) plaintiffs would see a variety of clinical

patients. See Appendix, Vol. 7, at 2130 (The CCC "Viewbook") ("The Cleveland Clinic provides ample volume and variety of patients."). However, during their years as CCC students in the 1990s, plaintiffs bore most of the burden of finding the patients for their clinical training, the number of clinical patients they saw was inadequate, and the variety of clinical patients they saw was inadequate. Indeed, a significant portion of the "patients" seen by plaintiffs as part of their clinical training were actually healthy people, such as family members, whom plaintiffs had recruited to be stand-in patients. CCC knew as early as 1989 that it did not have the ability to provide sufficient patients, as evidenced by a report dated May 21, 1989, sent by CCC to the Council on Chiropractic Education (CCE), an accreditation body through which chiropractic colleges monitor and certify themselves. See id. at 2136-38 (Progress Report Prepared for the Commission on Accreditation of CCE). Responding to an earlier letter from CCE expressing concerns about the insufficiency in volume and variety of cases in the CCC clinic, CCC set forth its policy regarding patient recruitment in that 1989 report, including the following statements: "patient recruitment in the public clinic is a joint responsibility of the College [i.e., CCC] and the intern [i.e., student]" and "individual contacts are the main responsibility of the intern, under the guidance of the supervising clinicians." Id. at 2138. CCC went on to state: "This policy, or its successor, will be published in the next editions of publications such as the Clinic Manual, Student Handbook, and College catalog, and it is already being shared with entering students during Orientation." Id. On the contrary, however, this "joint responsibility" patient recruitment policy was not disclosed to prospective students until after 1996, when a former student obtained a jury verdict against CCC on a claim of fraud,[2] and CCC thereupon changed its written publications.[3]

_____

[2]This is in reference to the case upon which plaintiffs based their collateral estoppel argument in their unsuccessful motion for partial summary judgment.

[3]Plaintiffs admit that the Clinic Manual was changed before 1996. However, plaintiffs allege, the Clinic Manual was not provided to CCC students until their

-4-

In its defense, CCC presented evidence at trial to show the following facts. Plaintiffs each successfully graduated from CCC, having met all the clinical requirements to graduate. Each thereafter passed the board examination and obtained a license to practice, except for one who did not apply for a license. At the time plaintiffs were enrolling in CCC, the college had already been accredited by CCE for many years. In March of 1992, a CCE evaluation team visited the school specifically to evaluate CCC's compliance with the 1991 standards for chiropractic colleges and published a report referred to as "the 1992 CCE Accreditation Report." See id., Vol. 3, at 868-934. The 1992 CCE evaluation team reported: "The number and variety of patients seen in the [CCC] clinic is adequate to meet the learning requirements of the graduate"; "[t]here is evidence . . . that the average number of out-patient visits is about 30% greater than required"; and "[o]nly one or two student Interns voiced concern as to the availability of adequate patients to meet the clinic requirements." Id. at 907. The 1992 CCE evaluation team also reported that: "Highly successful evaluation systems have been developed by the [CCC] clinic which demonstrate that students are becoming capable caregivers and meeting the minimum Standards of the Clinical Competence Document." Id. at 910. In addition, CCC had been accredited since 1984 by the Commission of Institutions of Higher Education of the North Central Association of Colleges and Schools (NCACS), which published a 1997 report favorably evaluating the CCC clinical program. See id., Vol. 4, at 1028-29.

The jury returned a verdict in favor of CCC on plaintiffs' breach of contract and fraud claims, but against CCC on plaintiffs' negligent misrepresentation claim. The jury awarded each plaintiff $1.00 in actual damages and $15,000.00 in punitive damages. CCC filed a post-trial motion for judgment as a matter of law, challenging the jury's finding of liability for negligent misrepresentation and the damages awards. The district court denied CCC's motion, and this appeal followed.

---

second or third year of school. See Brief for Appellee at 4 & n.3.

**Discussion**

*Exclusion of witnesses and exhibits*

We first address CCC's argument that the district court abused its discretion in granting plaintiffs' motion in limine requesting exclusion of all witnesses who appeared on CCC's trial exhibit list but had not been included in CCC's disclosures and supplements provided under Fed. R. Civ. P. 26. CCC relies, as it did in the district court, upon Rule 26(e)(1), which states in part:

> A party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and *if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing*.

Fed. R. Civ. P. 26(e)(1) (emphasis added).

CCC argues that it was not required to formally disclose the witnesses in question pursuant to Fed. R. Civ. P. 26 because they were known to plaintiffs either through plaintiffs' own discovery disclosures and responses or through CCC's discovery responses. See Brief for Appellant at 46-47 & n.4. In support of this argument, CCC cites cases which have interpreted Rule 26(e)(1) broadly. See id. at 44-45 (citing, e.g., Coleman v. Keebler Co., 997 F. Supp. 1102 (N.D. Ind. 1998)). CCC also points out that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected." Brief for Appellant at 43 (quoting Fed. R. Evid. 103(a)). In the present case, CCC contends, its substantial rights were affected by the district court's evidentiary ruling because the witnesses who were excluded were "critical" to CCC's defense. See id. at 46 & n.6 (listing and describing the "critical witnesses" who were excluded).

We are not persuaded that the excluded witnesses were critical to CCC's defense; it appears that their testimony would have substantially duplicated documentary evidence admitted at trial or would have been only marginally relevant to the issues in dispute. More importantly, however, we hold that the district court reasonably could have concluded that CCC's use of the undisclosed witnesses and exhibits would have unfairly prejudiced plaintiffs at trial, even if the witnesses and exhibits had been identified or referenced somewhere in the course of discovery. We therefore hold that the district court did not abuse its discretion in excluding the evidence in question in an effort to avoid an unfair surprise and to achieve substantial justice in the present case. See, e.g., Mawby v. United States, 999 F.2d 1252, 1254 (8th Cir. 1993) (noting that standard of review is abuse of discretion and that the general purpose of the discovery procedures is to eliminate surprise and achieve substantial justice).[4]

*Denial of judgment as a matter of law*

We now turn to the district court's denial of CCC's post-verdict motion for judgment as a matter of law, which we review *de novo*. See Summit v. S-B Power Tool, 121 F.3d 416, 420 (8th Cir. 1997) ("this Court uses the same standard as the district court"), cert. denied, 523 U.S. 1004 (1998). Judgment as a matter of law is appropriately granted, notwithstanding a jury verdict, when, upon viewing the evidence in the light most favorable to the nonmoving party and without weighing evidence or making credibility determinations, the court determines that the evidence

---

[4]In Mawby v. United States, 999 F.2d 1252, 1254 (8th Cir. 1993), an appeal from a bench trial, we held that it was not an abuse of discretion for the trial court to *permit* an undisclosed witness to testify where there was no evidence of bad faith. However, because of the element of surprise and because the evidence in question turned out to be critical to the outcome of the trial court's disposition of the case, this court vacated the judgment and remanded the case to allow the opposing party an opportunity to present rebuttal evidence as it had requested at trial.

is not susceptible to any reasonable inference sustaining the nonmoving party's position. See id. at 420-21 (citing cases).

CCC argues that its motion for judgment as a matter of law should have been granted because the evidence presented at trial did not reasonably support inferences necessary to sustain the jury's liability finding and damages awards. Regarding its liability for negligent misrepresentation, CCC argues, among other things, that the jury could not reasonably find that each plaintiff actually suffered a pecuniary loss or that such losses were proximately caused by CCC's alleged misrepresentations. Regarding the $1.00 per plaintiff actual damages awards, CCC argues that nominal damages may not be awarded on a negligent misrepresentation claim under Missouri law[5] or, alternatively, that the evidence at trial did not reasonably support a finding that each plaintiff actually lost $1.00 as a proximate result of CCC's misrepresentations. Regarding the $15,000.00 per plaintiff punitive damages awards, CCC argues that punitive damages may not stand in the absence of actual damages under Missouri law or, alternatively, that the evidence at trial did not reasonably support a finding of malice, as required for awarding punitive damages.

Upon de novo review, and for the reasons stated below, we hold that the district court did not err in declining to set aside the jury's finding of liability for negligent misrepresentation or the jury's actual damages awards in the amount of $1.00 per plaintiff. However, we hold that the district court did err in failing to set aside the $15,000.00 per plaintiff punitive damages awards.

---

[5]We note that CCC's argument is based upon the assumption that a $1.00 actual damages award is a nominal award indicating that no pecuniary loss was actually suffered. CCC does not argue, and we do not consider the argument, that plaintiffs' actual losses were de minimis – in other words, that they were so small that they are not compensable under the law.

In order to find CCC liable for negligent misrepresentation under Missouri law, the jury was required to find the following: (1) that CCC supplied information in the course of its business; (2) that, because of CCC's failure to exercise reasonable care, the information was false; (3) that the information was intentionally provided by CCC for a limited group of persons, including plaintiffs, in a particular business transaction; (4) that plaintiffs justifiably relied on the information; and (5) that, due to plaintiffs' reliance on the information, they each suffered a pecuniary loss. See Sanders v. Insurance Co. of North America, 42 S.W.3d 1, 9 (Mo. Ct. App. 2000) (citing Wellcraft Marine v. Lyell, 960 S.W.2d 542, 546 (Mo. Ct. App. 1998) (citing the Restatement (Second) of Torts § 552 (1997))). Upon viewing the evidence in the light most favorable to plaintiffs, without weighing evidence or making credibility determinations, we conclude that the jury reasonably could have drawn the necessary factual inferences to satisfy each element of plaintiffs' negligent misrepresentation claim. The evidence readily showed that, in the course of recruiting students, CCC intentionally provided prospective students (including plaintiffs) promotional materials containing information regarding CCC's clinical program, that those materials gave false information about *who* would be responsible for recruiting clinical patients, and that plaintiffs relied on that information. Moreover, viewing the evidence in the proper light, we conclude that the jury reasonably could have inferred from the evidence that CCC did not exercise reasonable care to ensure that its joint responsibility policy was truthfully stated in its promotional materials and that plaintiffs' reliance upon those misleading materials was both justified and the proximate cause of limited pecuniary losses – that is, the minor, but unexpected, costs associated with having to find and recruit patients themselves for the clinic. We therefore hold that the district court did not err in denying CCC's motion for judgment as a matter of law on the issue of CCC's liability to plaintiffs for negligent misrepresentation.

We now turn to CCC's argument related to the jury's actual damages awards. In the present case, the district court instructed the jury on actual damages, not

nominal damages. See Appendix, Vol. 7, at 2167 (Instruction No. 8). The verdict form referred to actual damages, not nominal damages. See id. at 2166 (Verdict C-1). However, because the jury awarded only $1.00 in actual damages to each plaintiff, CCC argues that the jury was really awarding nominal damages, which are not recoverable on a claim for negligent misrepresentation as a matter of Missouri state law.

Interpretations of state law are reviewed on appeal *de novo*. See Salve Regina College v. Russell, 499 U.S. 225, 231 (1991). In interpreting state law, we first consider any pertinent decisions of the state's highest court; if none are available, we look to the lower courts' decisions and other reliable state law authorities. Our task is to determine how the state's highest court would decide the issue at hand. See Lindsay Mfg. Co. v. Hartford Accid. & Indem. Co., 118 F.3d 1263, 1267-68 (8th Cir. 1997). In the present case, no one disagrees with the proposition that, under Missouri law, nominal damages are not recoverable on a negligent misrepresentation claim. The critical question is whether, under the facts of this case, the jury's awards of $1.00 in actual damages to each plaintiff must be treated as awarding nominal damages under Missouri law. CCC argues that Missouri case law suggests that they must. We disagree.

Contrary to CCC's argument, Walker Mobile Home Sales, Inc. v. Walker, 965 S.W.2d 271, 276-77 (Mo. Ct. App. 1998) (Walker), cannot be read for the blanket proposition that "under Missouri law an award of $1.00 is nominal." Reply Brief for Appellant at 5 (emphasis original). In Walker, the jury had returned a verdict finding no actual damages on a third-party fraud claim; then, after being ordered by the trial court to reconsider, the jury returned a verdict of $1.00 in actual damages on the fraud claim. Upon review, a Missouri appellate court held that the jury's award of $1.00 "constituted nominal damages" because the party asserting the claim "was in the same position he would have been in" absent the alleged fraud and he had "failed to establish that he suffered any damages." Id. at 277. Similarly, in MLJ Investments,

Inc. v. Reid, 905 S.W.2d 900, 901-02 (Mo. Ct. App. 1995), a Missouri appellate court vacated a $1.00 actual damages award on a claim of fraud, but explained: "[a]lthough the instruction required the jury to find that there was damage, and we must assume that it found damage, *the finding is not supported by substantial evidence and cannot stand*." Id. at 902 (emphasis added).[6] No case cited by CCC, nor any other Missouri case of which we are aware, holds that an award of $1.00 in actual damages must be treated as an award of nominal damages without regard to the evidence of actual damages.

As stated above, viewing the evidence in the light most favorable to plaintiffs, and drawing all reasonable inferences in favor of the verdict, we conclude that the jury could have found plaintiffs each entitled to a small amount of monetary compensation for the costs of having to find and recruit patients for the clinic – costs which plaintiffs would not have incurred had CCC provided an ample volume and variety of clinical patients, as represented in the Viewbook. See Appendix, Vol. 7, at 2130. Indeed, CCC recognizes that, under § 552B of the Restatement (Second) of Torts, damages recoverable on a negligent misrepresentation claim may be measured as the loss suffered as a result of the plaintiff's reliance upon the misrepresentation. See Brief for Appellant at 19-20. We therefore hold that the district court did not err in denying CCC's motion for judgment as a matter of law on the issue of actual damages.

We now consider CCC's argument that the jury's $15,000.00 per plaintiff punitive damages awards should be vacated, even if the actual damages awards are not vacated, because the jury could not reasonably find, by clear and convincing

---

[6]In MLJ Investments, Inc. v. Reid, 905 S.W.2d 900 (Mo. Ct. App. 1995), the plaintiffs had asked for a verdict of $1.00 in actual damages and for punitive damages. The jury returned a verdict finding $1.00 in actual damages, as requested, and an additional $50,000 in punitive damages. The state court of appeals vacated the actual damages award and the punitive damages award.

evidence, that CCC consciously disregarded or was completely indifferent to the rights of plaintiffs. See, e.g., Rodriguez v. Suzuki Motor Corp., 936 S.W.2d 104, 111 (Mo. 1996) (en banc) (clear and convincing standard of proof applies to claims for punitive damages); Alack v. Vic Tanny Int'l of Missouri, Inc., 923 S.W.2d 330, 339 (Mo. 1996) (en banc) (Alack) (under Missouri law, punitive damages require conscious disregard or complete indifference to the rights of others). Because the jury found CCC liable for negligent misrepresentation, but not for fraud, CCC argues, the jury had to have determined, by a preponderance of the evidence, that CCC failed to exercise reasonable care, *not* that it engaged in deliberate or reckless wrongdoing. It follows, CCC argues, that, if the jury did not find deliberate or reckless wrongdoing under the preponderance standard, it could not have found conscious disregard or complete indifference under the clear and convincing standard, as required to support punitive damages under Missouri law. CCC additionally suggests that no reasonable jury could have found grounds for awarding punitive damages in light of the evidence of CCC's good faith reliance on its CCE and NCACS accreditations.

Plaintiffs argue in response that they established a sufficient basis for the punitive damages awards by showing that CCC deliberately concealed material information from prospective students, knowing that, by the time students learned the truth, they would be financially committed to CCC. For example, they argue, CCC's founder and president, Dr. Cleveland, testified that he could not explain why CCC had promised CCE in 1989 that it would disclose in the student handbook that patient recruitment was a "joint responsibility" between the school and student, and yet no such disclosure was added to the handbook until 1996. Plaintiffs also maintain that they sufficiently disproved CCC's alleged good faith reliance on its CCE and NCACS accreditations – by showing, for example, that the CCE evaluation teams did not genuinely consider student input, that the CCE is a *self-regulating* coalition of chiropractic colleges (which formerly had Dr. Cleveland as its president), and that CCE has a history of rubber stamping its members' accreditations.

As stated above, we are of the opinion that the evidence at trial sufficiently supported the jury's findings, by a preponderance of the evidence, that CCC disseminated false information to prospective students, that the information was false as a result of CCC's failure to exercise reasonable care, and that plaintiffs suffered a pecuniary loss, albeit small, as a result of their justified reliance on that false information. However, the standards under Missouri law for awarding punitive damages required the jury to make the additional finding, by clear and convincing evidence, that CCC knew or should have known that its dissemination of false information would likely cause injury. We hold that a reasonable jury could not have made such a finding even though, as plaintiffs emphasize, CCC knew or should have known of the discrepancy between what was represented in its promotional materials and what was stated in the clinic manual (which reflected the truth). See Brief for Appellees at 19. The Missouri Supreme Court has explained that "[n]ot every misrepresentation of fact justifies submission of punitive damages." Kansas City v. Keene Corp., 855 S.W.2d 360, 375 (Mo. 1993) (en banc) (per curiam) (affirming the trial court's decision to grant a motion for judgment notwithstanding the verdict and vacate a punitive damages award based on fraud) (citing McDonald v. Ozark Machinery Co., 720 S.W.2d 42, 44 (Mo. Ct. App. 1986) (affirming the trial court's decision to grant a motion for directed verdict for the defendant on the plaintiff's fraud claim and related punitive damages request)). "The evidence must show that, at the time of the act complained of, the defendant had knowledge of a high degree of probability of injury to a specific class or persons." Alack, 923 S.W.2d at 339. Upon careful review of the record in the present case, we conclude that the evidence simply does not reasonably support a finding, by clear and convincing evidence, that CCC knew or should have known of a high probability that its misrepresentations regarding patient availability in its clinic would result in injury or loss to its students. We therefore hold that the district court erred under Missouri law in denying CCC's motion for judgment as a matter of law on the issue of punitive damages.

## Conclusion

The judgment of the district court is affirmed in part and reversed in part, and the case is remanded to the district court for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.